1

2

3

4                          UNITED STATES DISTRICT COURT

5                         NORTHERN DISTRICT OF CALIFORNIA

6                              SAN FRANCISCO DIVISION

7

8    G.N.,[1]

9                 Plaintiff,                    Case No.  23-cv-04293-PHK

10         v.

11   MARTIN O'MALLEY, Commissioner of          **ORDER REMANDING CASE**
     Social Security,
12
                 Defendant.
13

14         Plaintiff G.N. ("Plaintiff") brings this action under the Social Security Act, 42 U.S.C.

15   § 405(g) ("the Act"), seeking judicial review of a final decision by the Commissioner of the Social

16   Security Administration, Defendant Martin O'Malley ["Commissioner"], denying her application

17   for supplemental security income.  [Dkt. 1].  In this Court, Plaintiff filed a Motion for Summary

18   Judgment, which the Court construes as Plaintiff's Opening Brief, the Commissioner filed a

19   Cross-Motion for Summary Judgment, which the Court construes as the Commissioner's

20   Response Brief, and Plaintiff filed a Reply Brief.[2]  [Dkts. 12, 14-15].  The Commissioner has also

21   _____

22   [1] In actions involving requested review of a decision by the Commissioner of the Social Security
     Administration, the Court generally uses the first name and initial of last name (or just the initials)
23   of the Plaintiff in the Court's public Orders out of an abundance of caution and regard for the
     Plaintiff's potential privacy concerns.
24
     [2] The Parties filed their briefing as cross-motions for summary judgment which was the standard
25   practice in this District for many years.  Effective December 1, 2022, the Supplemental Rules for
     Social Security establish a "simplified procedure that recognizes the essentially appellate character
26   of actions that seek only review of an individual's claims on a single administrative record" and
     "displace[] summary judgment as the means of review on the administrative record."  Fed. R. Civ.
27   P. Supp. Soc. Sec. R. advisory committee's note; *see* Fed. R. Civ. P. Supp. Soc. Sec. R. 5 ("The
     action is presented for decision by the parties' briefs.").  Accordingly, the Court construes the
28   Parties' summary judgment briefing as Plaintiff's Opening Brief, the Commissioner's Response
     Brief, and Plaintiff's Reply Brief.  *See Sabrina M.C. v. Kijakazi*, No. EDCV 22-2187-KS, 2023 WL

United States District Court
Northern District of California

1    filed the Administrative Record.  [Dkts. 10-11 (hereinafter, "AR")].

2        After carefully analyzing the briefs, the record, and the applicable law, the Court

3    **REVERSES** the Commissioner's final decision and **REMANDS** for further proceedings

4    consistent with this Order.

5                                    **BACKGROUND**

6        Plaintiff was born on December 8, 2001; she claims to have been disabled since infancy.

7    [AR 44].  Plaintiff was eighteen years old on the alleged disability onset date.[3]  [AR 46].  She

8    speaks English and has completed several years of college.  [AR 200, 1019].  Plaintiff has no

9    employment history.  [AR 201].

10       On August 20, 2020, Plaintiff protectively filed an application for supplemental security

11   income, pursuant to Title XVI of the Act.  [AR 182-88].  In her application, Plaintiff claimed that

12   she was unable to work due to spina bifida.  [AR 201].  The Commissioner denied Plaintiff's

13   application on October 5, 2020, and again denied the application upon reconsideration, on

14   November 10, 2021.  [AR 71-76, 84-89].

15   **June 28, 2022 Hearing**

16       Plaintiff successfully requested a hearing before an Administrative Law Judge ("ALJ").

17   [AR 97-168].  That hearing took place on June 28, 2022, before ALJ Serena Hong.  [AR 1011-

18   037].  Plaintiff appeared and testified at the hearing, accompanied by her attorney.  *Id.*  The ALJ

19   also heard testimony from a Vocational Expert.  *Id.*  Medical opinions were provided by two non-

20   examining state agency physicians, H. Jone, M.D., and S. Hanna, M.D.; a consulting internal

21   medicine physician, Robert Tang, M.D.; and a treating pediatrician, Lisa Leavitt, M.D.  *See* AR

22   46-50, 59-60, 377-80, 927.

23       At the hearing, Plaintiff testified that she is unable to work primarily because of limited

24   mobility in her legs and other complications resulting from spina bifida.  [AR 1018, 1020].

25

26   8945707, at *1 (C.D. Cal. Nov. 20, 2023).

27   [3] In her application for supplemental security income, Plaintiff alleged that she had been disabled
28   since April 1, 2002.  [AR 182].  However, the relevant period for Title XVI applications beings on
     the date of filing.  20 C.F.R. § 416.335.

Plaintiff testified that, due to back pain, she can sit for no more than forty minutes continuously before she must stand and walk around for several minutes to alleviate the pain.  [AR 1020, 1023, 1025].  She testified that she wears orthopedic foot supports to walk, that the supports frequently cause bruising, and that she sometimes has to go to the hospital to get the orthopedics readjusted.  [AR 1020-21].  Plaintiff testified that she requires a catheter to urinate.  [AR 1021].  She testified that she usually self-catheterizes, a process that takes five to ten minutes each time.  *Id.*  She further testified that she frequently has to call her mother for assistance with catheterizations.  AR 1021, 1028-29].  Plaintiff testified that she must undergo a "special procedure" every night for bowel movements.  [AR 1022, 1029].

Plaintiff testified that, at the time of the hearing, she was about to enter her third year of college.  [AR 1019].  She reported that she would be switching from a hybrid course schedule (due to COVID-19) to a fully in-person course schedule.  *Id.*  She testified that she planned to take five classes.  *Id.*  Plaintiff testified that she receives special accommodations from the college for her impairments.  [AR 1019-20].  Specifically, Plaintiff testified that she is permitted to stand up and/or take bathroom breaks "when needed."  [AR 1020].  She further testified that she is allotted "extra time" to walk between classes.  *Id.*  Plaintiff reported that school was "going good so far" and that she was making good grades.  [AR 1019-20].  She testified that she planned to be a dentist.  [AR 1022-23].

At the time of the hearing, Plaintiff testified that she currently lives with her parents and two siblings.  [AR 1018].  She testified that she relies on her mother for car transportation, cooking, and assistance with medical issues (such as catheterization as discussed above).  [AR 1027-29].  Plaintiff recently started bicycling with her family approximately once or twice each week for thirty to forty minutes each time.  [AR 1022].  She reported that her mother always accompanies her on these bike rides.  [AR 1022, AR 1027-28].

**ALJ's September 28, 2022 Written Decision**

On September 28, 2022, the ALJ issued a written decision in accordance with the Commissioner's five-step, sequential evaluation process.  [AR 15-24].  The five-step analysis requires the ALJ to consider whether the claimant: (1) has engaged in "substantial gainful activity"

3

during the alleged period of disability; (2) has a medically determinable impairment or combination of such impairments that is "severe;" (3) has a condition that meets or equals the severity of a listed impairment; (4) has the residual functional capacity ("RFC") to return to their past relevant work; and, if not, (5) can perform other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Wischmann v. Kijakazi*, 68 F.4th 498, 504 & n.3 (9th Cir. 2023). It is well-settled that, under this analysis, the claimant has the burden to establish a *prima facie* case of disability at steps one through four. *Triechler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1096 n.1 (9th Cir. 2014) (quoting *Hoopai v. Astrue*, 499 F.3d 1071, 1074-75 (9th Cir. 2007)). The burden then shifts to the Commissioner, at step five to show that the claimant retains sufficient RFC to perform work in the national economy, given the claimant's age, education, and work experience. *Id.* A finding that a claimant is "disabled" or "not disabled" at any point in the five-step review is conclusive and terminates the analysis. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520). To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. 42 U.S.C. §§ 423(d)(1)(A), (2)(A).

In the September 28, 2022 written decision, the ALJ determined, at step one, that Plaintiff had not engaged in substantial gainful activity since August 20, 2020, the operative alleged disability onset date. [AR 17]. At step two of the analysis, the ALJ found that Plaintiff had the following severe impairments: "spina bifida, shunted hydrocephalus, neurogenic bladder and bowel, [and] foot deformities." *Id.* The ALJ also found that Plaintiff suffered from "myopia with bilateral astigmatism," but determined that that specific impairment was non-severe. [AR 18]. None of Plaintiff's impairments, alone or in combination, were found to be presumptively disabling at step three. *Id.*

Prior to reaching step four, the ALJ assessed Plaintiff's RFC and found her capable of sedentary work, subject to the following limitations:

> [The claimant] cannot perform any pushing or puling [sic] or operation of foot controls with the bilateral lower extremities; must avoid uneven terrain. The individual cannot climb ladders, ropes[,] and scaffolds. The individual is limited to occasional postural maneuvers such as stooping, crouching, crawling[,] and

United States District Court
Northern District of California

balancing as described in the SOC.  The individual would require bilateral knee braces for ambulation.  The individual cannot work around hazards.

[AR 18-19].

In establishing this RFC, the ALJ evaluated Plaintiff's subjective allegations of her symptoms, the objective medical evidence, and the medical opinion evidence.  [AR 19-22].  The ALJ determined that, while Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, Plaintiff's testimony regarding the intensity, persistence, and limiting effects of the symptoms was "not entirely consistent" with the overall record.  [AR 22].  The ALJ likewise concluded that the objective medical evidence, though supportive of some functional limitations, did not support the existence of limitations greater than those set forth in the RFC assessment.  *Id.*

In addition, the ALJ considered the medical opinion evidence.  The ALJ first discussed the opinion from Dr. Jone regarding Plaintiff's functional limitations caused by her physical impairments.  [AR 21; *see* AR 48-50].  In sum, Dr. Jone opined that Plaintiff was capable of lifting and carrying less than ten pounds frequently and occasionally; standing and walking for up to two hours within an eight-hour day; sitting for up to six hours within an eight-hour day; and precluded from pushing/pulling with the lower extremities, climbing ladders, ropes, or scaffolds, or exposure to hazards such as machinery or heights.  [AR 48-50].  The ALJ found Dr. Jone's opinion "partially persuasive."  [AR 21].  The ALJ found that Dr. Jone's specific limitation of lifting and carrying less than ten pounds was "overly restrictive and inconsistent with the claimant's activities of daily living, treatment record[,] and recommendation for exercising including swimming and gymnastics."  *Id.*

The ALJ briefly discussed Dr. Hanna's opinion.  *Id.*; *see* AR 59-60.  Dr. Hanna's opinion largely tracked with Dr. Jone's opinion, except that Dr. Hanna restricted Plaintiff to lifting and carrying up to ten pounds frequently and occasionally.  [AR 59-60].  The ALJ found Dr. Hanna's opinion to be "persuasive" because it was "consistent with the claimant's activities of daily living and normal examinations."  [AR 21].

The ALJ next discussed Dr. Tang's opinion testimony.  [AR 21-22; *see* AR 377-80].  Dr.

1    Tang opined that Plaintiff could lift and/or carry up to twenty pounds occasionally and up to ten

2    pounds frequently; that she could stand and/or sit for up to four hours within an eight-hour

3    workday; that she required "time-out" for regular bathroom breaks; that she not handle activity or

4    danger; that she required bilateral orthopedic foot supports to ambulate; and that she required

5    "absolute lumbar spine protection." [AR 380]. The ALJ accorded Dr. Tang's opinion with

6    "partial weight," finding that the opinion was "consistent with a reduction in standing and walking

7    and a sedentary exertional level," but "vague as to absolute protection of her lumbar spine." [AR

8    21-22]. The ALJ found that Dr. Tang's opinion was inconsistent with the overall record, because

9    the "records document bike riding and encouragement to continue such activity." [AR 22].

10        The ALJ's written decision does not discuss Dr. Leavitt's opinion at all. *See generally* AR

11   15-24.

12        At step four, the ALJ found that Plaintiff had no past relevant work. [AR 22].

13        At step five of the analysis, the ALJ determined, based on the Vocational Expert's

14   testimony, that Plaintiff was "capable of making a successful adjustment to other work that exists

15   in significant numbers in the national economy," based on her age, education, work experience,

16   and residual functional capacity. [AR 22-23]. The ALJ determined that Plaintiff would be able to

17   perform such jobs as a hand packager, a final assembler, or an order clerk. [AR 23]. For that

18   reason, the ALJ concluded that Plaintiff was not under a "disability," as defined by the Act, and

19   denied Plaintiff's application for supplemental security income. *Id.*

20        That denial prompted Plaintiff's request for judicial review. *See* Dkt. 1; AR 1-11. The

21   Parties have consented to proceed before a Magistrate Judge for all purposes, including the entry

22   of final judgment, under 28 U.S.C. § 636(c). *See* Dkts. 7, 9.

23                                      **STANDARD OF REVIEW**

24        In Social Security disability cases, the Court's review is limited to determining: (1)

25   whether substantial evidence supports the Commissioner's decision; and (2) whether the

26   Commissioner's decision comports with relevant legal standards. *Stout v. Comm'r, Soc. Sec.*

27   *Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006) ("We will uphold the Commissioner's denial of

28   benefits if the Commissioner applied the correct legal standards and substantial evidence supports

United States District Court
Northern District of California

6

the decision."); *accord Woods v. Kijakazi*, 32 F.4th 785, 788 (9th Cir. 2022); *see generally* 42 U.S.C. § 405(g).  "Overall, the standard of review is highly deferential."  *Kitchen v. Kijakazi*, 82 F.4th 732, 738 (9th Cir. 2023) (quoting *Rounds v. Comm'r*, 807 F.3d 996, 1002 (9th Cir. 2015)).

"Substantial evidence" is "more than a mere scintilla"—it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Woods*, 32 F.4th at 788 (quoting *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019)).  Any conflict in the evidence is to be resolved by the ALJ, and not the Court.  *Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022) ("Where evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed.").

## ANALYSIS

Plaintiff challenges the ALJ's decision on two main grounds.  Plaintiff argues, first, that the ALJ's RFC determination is not supported by substantial evidence, because the ALJ improperly evaluated her credibility and subjective complaints of pain.  [Dkt. 12 at 6-11].  In her second point of contention, Plaintiff argues that the ALJ failed to properly evaluate and weigh the medical opinion evidence.  *Id.* at 12-20.  The Commissioner insists, however, that the ALJ properly considered the entire evidentiary record and followed the applicable, controlling law in determining that Plaintiff is not disabled for purposes of the Act.  [Dkt. 14 at 3-10].

**I.      Whether the ALJ's RFC Determination Erroneously Relied on Improperly Rejecting Plaintiff's Testimony on Pain Symptoms and Credibility**

Plaintiff challenges the ALJ's RFC findings, which are based on an evaluation of the Plaintiff's subjective allegations regarding the intensity, persistence, and limiting effects of her medically determinable impairments.  [Dkt. 12 at 6-11].  Specifically, Plaintiff argues that the ALJ's adverse credibility determination was erroneous because the ALJ failed to provide "clear, convincing, and well-supported reasons" for making that determination.  *Id.*

"[S]ubstantial evidence does not support an ALJ's RFC assessment if 'the ALJ improperly rejected [the claimant's] testimony as to the severity of his pain and symptoms.'"  *Ferguson v. O'Malley*, 95 F.4th 1194, 1199 (9th Cir. 2023) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)).  The Ninth Circuit has established a two-part analysis for determining the

extent to which a claimant's symptom testimony must be credited. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Ferguson*, 95 F.4th at 1199 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014)). "If the claimant meets the first step of this analysis and there is no evidence of malingering, [then in the second step] the ALJ can reject the claimant's testimony about the severity of their symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* (quoting *Garrison*, 759 F.3d at 1014-15) (alteration omitted).

The clear and convincing standard requires the ALJ to "specifically identify" which portions of the claimant's testimony the ALJ finds "not to be credible" and "explain what evidence undermines that testimony." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (quoting *Treichler*, 775 F.3d at 1102) (remaining citations omitted). "This is not an easy requirement to meet: 'The clear and convincing standard is the most demanding required in Social Security cases.'" *Trevizo*, 871 F.3d at 678 (quoting *Garrison*, 759 F.3d at 1014-15). The ALJ determines "credibility, resolve[s] conflicts in the testimony, and resolve[s] ambiguities in the record." *Lambert*, 980 F.3d at 1277 (quoting *Treichler*, 775 F.3d at 1098). The ALJ may not "reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Smartt*, 53 F.4th at 494 (quoting *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005)). Nor may the ALJ "justify a credibility finding 'by ignoring competent evidence in the record that suggests another result.'" *Diedrich v. Berryhill*, 874 F.3d 634, 643 (9th Cir. 2017) (quoting *Gallant v. Heckler*, 763 F.2d 1450, 1456 (9th Cir. 1984)).

Here, Plaintiff alleges physical impairments resulting from spina bifida. In her written decision, the ALJ found that Plaintiff's impairments could reasonably have given rise to the severe pain and functional limitations to which Plaintiff testified that she suffers. [AR 22]. As a result, because the ALJ's decision relied on evaluating the credibility of Plaintiff's testimony about pain, then the ALJ was required to make the legally mandated subsidiary findings required by the Ninth Circuit as to Plaintiff's own testimony (*i.e.*, specifically identify the testimony found not credible and explain what evidence supports that finding). Because the ALJ made no finding that Plaintiff

1    was malingering, the ALJ was required to give specific, clear, and convincing reasons in support

2    of her adverse credibility finding.  *Garrison*, 759 F.3d at 1014-15.

3          In her written decision, the ALJ essentially rejected Plaintiff's symptom testimony for the

4    following reasons: (1) the ALJ found Plaintiff's symptoms testimony to be inconsistent with

5    medical treatment records showing that Plaintiff's physicians encouraged her to exercise; and (2)

6    the ALJ found Plaintiff's symptoms testimony to be inconsistent with Plaintiff's own reports that

7    she was bicycling on a weekly basis, that she was doing well in school, and that she was studying

8    to become a dentist.  [AR 22].

9          First, in making this adverse credibility finding, the ALJ cited treatment records showing

10   that Plaintiff was encouraged to exercise.  *Id.* ("The claimant's physicians have encouraged

11   exercise.").  The ALJ references a treatment record, dated July 17, 2020, which reports that

12   Plaintiff "enjoys biking 3x/week, 40-60 minutes each session." [AR 750].  The ALJ also

13   references a treatment record, dated July 5, 2019, which reports that Plaintiff "[f]unctions

14   independently with all [activities of daily living]" and states that Plaintiff "has previously been

15   recommended at the last several visits[] that she participate in an activity such as dance, yoga,

16   swimming or gymnastics."   [AR 743, 745].

17         While an ALJ may rely on records that "contradict claims of a totally debilitating

18   impairment," the ALJ's conclusion here is not supported by substantial evidence, much less clear

19   and convincing evidence.  *See Smartt*, 53 F.4th at 499-500 (explaining that "[e]ven if the claimant

20   experiences some difficulty or pain, her daily activities may be grounds for discrediting the

21   claimant's testimony to the extent that they contradict claims of a totally debilitating impairment,"

22   and concluding that the claimant's daily activities of cooking, cleaning, "doing crafts," and

23   "completing various chores, albeit in short increments due to pain," supported the ALJ's decision).

24          First, the fact that Plaintiff was *encouraged* by her physicians to engage in various forms

25   of exercise does not demonstrate that Plaintiff was *actually able* to engage in those activities for a

26   duration inconsistent with her testimony.  *See Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir.

27   2001) (holding claimant's ability to swim, do physical therapy, and exercise at home did not

28   detract from claimant's credibility); *Feliz v. Colvin*, No. CV-12-02196-PHX-BSB, 2014 WL

847137, at *9 (D. Ariz. Mar. 5, 2014) ("Plaintiff's limited walking on a treadmill, which was consistent with her doctor's advice that she exercise 'as tolerated,' is not inconsistent with her claims of severe abdominal pain."). The ALJ does not point to *any* evidence in the record to show that Plaintiff was actually capable of such levels or amounts of consistent exercise.

Indeed, other evidence in the record demonstrates that Plaintiff did not engage in significant exercise. *See, e.g.*, AR 349 ("It has previously been recommended at the last several office visits, that [Plaintiff] participate in an activity such as dance, yoga, swimming or gymnastics. She has not engaged in any of these activities. She has previously indicated an interest in swimming and even was looking into modifing [sic] braces for swimming, but she has not been swimming much recently.").

To meet the clear and convincing standard, the ALJ must identify, with specificity, the inconsistent portions of the medical report, link that evidence to the aspects of the testimony that are deemed not credible, and explain why the two are incongruent. *Lambert*, 980 F.3d at 1277. The ALJ failed to satisfy this demanding standard here.

Further, to the extent that the ALJ relied on Plaintiff's reports of bicycle riding and attending school to support an adverse credibility finding, the ALJ appears to have either ignored or mischaracterized aspects of Plaintiff's testimony necessary to understand the scope of her reported activities. *See Garrison*, 759 F.3d at 1016 (finding ALJ's selective presentation of the claimant's reported daily activities erroneous, where the ALJ failed to note that the claimant had to rest between activities, needed help to do the activities, and could not always complete the activities given her pain); *A.P. v. Kijakazi*, No. 23-cv-01184-EMC, 2024 WL 116307, at *10 (N.D. Cal. Jan. 10, 2024) ("The ALJ cannot mischaracterize statements and documents in the record or take these out of context in order to reach [her] conclusion on the claimant's credibility."). Specifically, Plaintiff testified that she only goes bicycling accompanied by her mother in case Plaintiff requires assistance with catheterization. [AR 1028]. The ALJ did not discuss this limitation on Plaintiff's ability to ride bicycles in the written decision, much less provide specific, clear, and convincing reasons for disregarding it. *See Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017) (holding that the ALJ erred by not providing "clear and convincing" evidence to

1   discredit the claimant on the basis of activities of daily living).

2       In discounting Plaintiff's symptoms testimony, the ALJ also pointed to the fact that

3   Plaintiff "excelled academically" in school and planned to become a dentist.  [AR 22 ("The

4   claimant has excelled academically.  The claimant was earning all A grades in high school[.]  She

5   attended Dominican College[.]")].  Specifically, the ALJ referenced a treatment record, dated June

6   23, 2016, which reports that Plaintiff was "earning [a]ll A's" in her ninth-grade class."  *See* AR

7   980.  The ALJ also appears to reference Plaintiff's testimony that she was entering her third year

8   of college and that she planned to be a dentist.  *See* AR 1019, 1022-23.  However, Plaintiff

9   testified that she received specific accommodations for her impairments from the college and

10  further testified that she would not be doing well in school but for those accommodations.  [AR

11  1019-20].  Plaintiff also testified that she often relied on her mother's travelling to the campus and

12  assisting Plaintiff with catheterization while at school.  [AR 1021].  The ALJ did not discuss these

13  limitations in the written decision, or provide specific, clear, and convincing reasons for

14  disregarding them.  *See Revels*, 874 F.3d at 668.  As a general matter, the fact that Plaintiff was

15  able to excel academically with accommodations and parental support and has set laudable

16  professional careers goals, despite her uncontradicted limitations for which there is objective

17  medical evidence to support, are not clear and convincing reasons for rejecting the credibility of

18  her testimony about symptoms and pain.

19      Accordingly, the Court finds that the ALJ erred by not linking specific medical evidence to

20  the relevant testimony about Plaintiff's symptoms and pain (which are supported by objective and

21  uncontroverted medical evidence) and further erred by failing to adequately explain why the

22  former rendered the latter not credible.  The Court finds that the ALJ's written decision

23  mischaracterizes and/or ignores portions of Plaintiff's testimony as to her daily activities and

24  limitations (and accommodations and parental assistance).  The Court finds that the written

25  decision erred in concluding that Plaintiff's reports of bicycling, attending school, and wanting to

26  become a dentist are inconsistent with her testimony as to her limitations, symptoms, and pain.

27  After reviewing the record and the written decision, ultimately the Court finds that the ALJ by

28  failed to provide "specific, clear, and convincing" reasons for relying on portions of the testimony

United States District Court
Northern District of California

11

1    regarding those activities to discredit Plaintiff's testimony about her limitations, symptoms, and

2    pain.  Remand on these issues is, therefore, required.

3    **II.      Evaluation of Medical Opinions**

4          As a second grounds for reversal, Plaintiff argues that the ALJ's RFC determination is not

5    supported by substantial evidence because the ALJ failed to properly evaluate and weigh the

6    medical opinion evidence of record.  [Dkt. 12 at 12-20].  Specifically, Plaintiff challenges the

7    ALJ's consideration of a four-page comprehensive internal medicine evaluation report from an

8    examining physician, Dr. Robert Tang, dated September 25, 2021; a Physical Residual Functional

9    Capacity Assessment, which was completed by a non-examining state agency physician, Dr. H.

10   Jone, on September 30, 2020; and a one-page letter from a treating physician, Dr. Lisa Leavitt,

11   dated March 22, 2018.  *Id.; see* AR 48-51, 377-80, 927.

12         An ALJ has a duty to evaluate and assign weight to all medical opinions in the record.

13   *Cross v. O'Malley*, 89 F.4th 1211, 1213-14 (9th Cir. 2024) ("When determining whether a

14   claimant is eligible for benefits, . . . the ALJ must scrutinize the various—often conflicting—

15   medical opinions to determine how much weight to afford each opinion.").  As of March 27, 2017,

16   the regulations governing the procedures and standards for evaluating medical source opinions

17   were substantially revised.  *See* 20 C.F.R. § 404.1520c (explaining how any adjudicator considers

18   medical opinions for claims filed after March 27, 2017).

19         Under the current regulations applicable here, the ALJ "will not defer or give any specific

20   evidentiary weight, including controlling weight, to any medical opinion(s), or prior

21   administrative medical finding(s), including those from [the claimant's] medical sources."  20

22   C.F.R. § 1520c(a).  Instead, the ALJ must consider the "persuasiveness" of each medical source

23   opinion using five factors: (1) supportability; (2) consistency; (3) relationship with the claimant

24   (including the length, purpose, and extent of the treatment relationship, as well as the "examining

25   relationship," and the frequency of examination); (4) specialization; and (5) "other factors that

26   tend to support or contradict a medical opinion," such as "evidence showing a medical source has

27   familiarity with the other evidence in the claim or an understanding of [the Social Security

28   Administration's] disability program's policies and evidentiary requirements."  20 C.F.R.

1   § 1520c(c).

2          In evaluating the persuasiveness of a medical source opinion, the "most important" factors

3   for the ALJ to consider are  the first two listed factors:  "supportability" and "consistency."

4   *Woods*, 32 F.4th at 791 (quoting 20 C.F.R. § 1520c(a)).  "Supportability means the extent to which

5   a medical source supports the medical opinion by explaining the 'relevant objective medical

6   evidence.'"  *Id.* at 791-92 (quoting 20 C.F.R. § 1520c(c)(1)) (alterations omitted).  "Consistency

7   means the extent to which a medical opinion is 'consistent with the evidence from other medical

8   sources and nonmedical sources in the claim."  *Id.* at 792 (quoting 20 C.F.R. § 1520c(c)(2))

9   (alterations omitted).

10          "An ALJ may discuss other factors, such as the medical source's 'relationship with the

11   claimant' or 'specialization,' but generally has no obligation to do so."  *Cross*, 89 F.4th at 1214

12   (quoting 20 C.F.R. § 416.920c(b)(2)).  "Only if the ALJ finds two or more contradictory medical

13   opinions 'both equally well-supported . . . and consistent with the record' must the ALJ then

14   articulate how he or she considered these other factors."  *Id.* (quoting 20 C.F.R. §§ 416.920c(b)(3),

15   (c)(3)-(5)).

16          Under the new framework, the ALJ is no longer required to "provide specific and

17   legitimate reasons for rejecting an examining doctor's opinion."  *Woods*, 32 F.4th at 787.  Rather,

18   the ALJ's decision must "simply be supported by substantial evidence."  *Id.*  "Even under the

19   revised regulations, however, 'an ALJ cannot reject an examining or treating doctor's opinion as

20   unsupported or inconsistent without providing an explanation supported by substantial evidence.'"

21   *Cross*, 89 F.4th at 1214 (quoting *Woods*, 32 F.4th at 792).

22          The ALJ's Analysis of Dr. Tang's Opinion

23          Plaintiff underwent a one-time, comprehensive internal medicine evaluation by an

24   internist, Dr. Robert Tang, on September 25, 2021.  [AR 377-80].  In his report, Dr. Tang wrote

25   that Plaintiff's chief complaint was "[s]pina bifida surgery."  [AR 377].  Dr. Tang summarized

26   Plaintiff's medical history as follows:

27          [The claimant] is a sincere and intelligent historian who has a polite presentation,
28          very brave, medium build, very neat with combed black hair.  The claimant has spina

United States District Court
Northern District of California

13

1    bifida lumbar 4-5, myelomingocele where she had a surgery repair; no cerebral shunt
2    needed; for her neurogenic bowel she had MACE procedure as described; for
     neurogenic bladder she self-catheterizes; in order to walk she absolutely needs her
3    bilateral AFOs (ankle-foot orthotic) due to absent Achilles reflex and abnormal foot
     development.  For her MACE procedure, she has an umbilicus channel where she is
4    able to inject fluid and then one hour later she would have a bowel movement.

5    *Id.*

6        A MACE (Malone Antegrade Continence Enema) procedure is a surgical procedure by

7    which a pathway is created between the patient's abdomen and large intestine, using a portion of

8    the appendix.  *See generally* Konrad M. Szymanski et al., *People with Spina Bifida Use their*

9    *MACE on Long-Term Follow-up: A Single Institutional Retrospective Cohort Study*, J. Pediatric

10   Urology, Aug. 2023.  After the pathway is created, a patient uses an enema connected via a tube

11   to the pathway to flush the large intestine with a saline solution and thus helps relieve severe

12   constipation or incontinence.  In daily usage, the MACE procedure involves the potential for

13   leakage at the access site and other complications at the site.

14       Dr. Tang described Plaintiff's self-reported activities of daily living as follows:

15       The claimant is fully able to take care of her personal needs and she can only perform
16       light activities of daily living.  After going through Special Education and
         occupational therapy, the claimant is now in her second year of college and she has
17       plans for some type of future occupation.  Currently she lives with her intact family.

18   [AR 377].

19       Dr. Tang wrote that Plaintiff required an ankle-foot orthosis ("AFO") to walk.  [AR 377-

20   80].  He observed that Plaintiff was unable to tandem walk or toe-heel stand.  [AR 378].  Upon

21   examination, Dr. Tang found that Plaintiff had zero degrees of extension in her lumbar spine

22   region and bilateral knees; twenty-five degrees of lateral extension in her lumbar spine region

23   bilaterally; zero degrees of plantar flexion and no more than five degrees of dorsiflexion in her

24   bilateral ankles; and decreased motor strength in her ankles.  *Id.*  Dr. Tang diagnosed Plaintiff as

25   suffering from: "Spina bifida requiring L4-5 myelomeningocele surgery.  She has residual

26   neurogenic bladder and bowel as discussed; some deformity of the feet and absent Achilles reflex

27   where the claimant absolutely needs her AFOs to ambulate.  The claimant needs absolute lumbar

28

United States District Court
Northern District of California

14

spine protection." [AR 380].

Based on his examination, Dr. Tang concluded that Plaintiff was limited to standing and/or walking for up to four hours continuously; that she could lift and/or carry up to twenty pounds occasionally and up to 10 pounds frequently; that she required "absolute protection of her lumbar spine," bilateral AFOs to ambulate, and "time-out [] for her bathroom privileges." *Id.*

In her written decision, the ALJ discussed Dr. Tang's opinion and summarized these points. [AR 21]. The ALJ recounted Dr. Tang's findings as follows:

> Dr. Tang commented that the claimant had spina bifida lumbar 4-5, myelomeningocele where she had a surgery repair. No cerebral shunt was needed. For her neurogenic bowel she had a MACE procedure and for her neurogenic bladder she self-catheterized. In order to walk, she absolutely needed her bilateral AFOs (ankle-foot orthotic) due to absent Achilles reflex and abnormal foot development. The claimant was fully able to take care of her personal needs and she could only perform light activities of daily living. After going through Special Education and occupational therapy, the claimant was now in her second year of college and had plans for some type of future occupation. The claimant needed absolute lumbar spine protection. There was decrease in physical function, also time-out needed to use the bathroom. She had a negative straight leg raising test. A sensory exam was grossly intact to light touch and pinprick. She had 2-/5 strength in the ankles, otherwise 5/5 strength everywhere else and normal bulk and tone. Dr. Tang diagnosed her with spina bifida requiring L4-5 myelomeningocele surgery. Her maximum standing/walking capacity was up to four hours. She had no maximum sitting capacity. She could lift and carry 20 pounds occasionally and 10 pounds frequently. She had limitations working around heights, heavy machinery and needed absolute protection of her lumbar spine. She had a neurogenic bladder and bowel, and absolute need for her bilateral AFOs. No other workplace limitations.

*Id.*

The ALJ then assigned "partial weight" to Dr. Tang's opinion overall, because it was "consistent with a reduction in standing and walking and a sedentary exertional level." [AR 21-22]. However, the ALJ found that Dr. Tang's specific opinion that Plaintiff required "absolute protection of her lumbar spine" was impermissibly "vague." [AR 22]. In addition, the ALJ found that Dr. Tang's specific opinion that Plaintiff required "complete elimination of activity or danger" in work settings was not supported by "the record" which "document[s] bike riding and encouragement to continue such activity." *Id.*

Plaintiff argues that the ALJ's assessment of Dr. Tang's opinion is fatally flawed and not supported by substantial evidence because: (1) the ALJ did not adopt or reject a "crucial portion" of Dr. Tang's opinion—that Plaintiff required extra breaks "for her bathroom privileges;" and (2)

the ALJ did not consider the supportability factor in evaluating Dr. Tang's specific opinion that Plaintiff required "absolute protection of her lumbar spine." [Dkt. 12 at 14-15].

The Commissioner, in response, argues that the ALJ properly considered Dr. Tang's opinion and adhered to the correct legal framework in doing so. [Dkt. 14 at 7-9]. In response to Plaintiff's first argument regarding bathroom privileges, the Commissioner argues that the ALJ was not required to explicitly adopt or reject Dr. Tang's opinion regarding "bathroom privileges," because it was "not discussed in any detail in Dr. Tang's report," and because "what little information is provided in the report appears to have been based upon Plaintiff's subjective reports to Dr. Tang at her consultative examination." *Id.* at 8-9. In response to Plaintiff's second argument regarding protection of her lumbar spine, the Commissioner argues that the ALJ properly concluded that Dr. Tang's opinion regarding "absolute protection of her lumbar spine" was "vague and otherwise inconsistent with Plaintiff's regular bike riding." *Id.* at 8. The Commissioner insists that the ALJ may find an opinion unpersuasive based on *either* consistency or supportability but need not explicitly address both factors. *Id.* at 7-8.

The Court finds that the ALJ erred by failing to discuss (much less accept, reject, or explain the impact of) Dr. Tang's opinion regarding Plaintiff's need for bathroom breaks given that the ALJ excluded such a limitation in the RFC. *See* SSR 96-8p ("If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."). Although the Commissioner proffers a potential rationale for the ALJ's apparent rejection of Dr. Tang's limitation for bathroom breaks (*viz.,* that it was "not a quantifiable limitation" and "based upon Plaintiff's subjective reports to Dr. Tang at a single consultative examination"), the ALJ did not provide such reasoning in the written decision, and the Court cannot consider *post hoc* rationalizations. *See Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1225-26 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasonings and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking."). As discussed, the MACE procedure requires opening a valve or aperture in the wall of the abdomen, injecting or introducing an enema solution into the MACE opening, and then allowing that fluid to

flush the large intestine to empty the bowels. Dr. Tang's opinion regarding the need for bathroom breaks is thus entirely understandable and the ALJ's failure to discuss the issue entirely is unexplained on the current record, and hence, erroneous. The error in failing to discuss Dr. Tang's limitation for bathroom breaks impacted the ALJ's RFC assessment and further impacted the hypothetical questions posed to the Vocational Expert. As such, the error was harmful.

The Court likewise finds that the ALJ erred by failing to explicitly discuss the supportability of Dr. Tang's opinion concerning an "absolute need" for lumbar spine protection. To the extent that the ALJ's statement that Dr. Tang's opinion is inconsistent with other evidence in the record was intended to address supportability of the opinion, the finding is insufficient. The ALJ is required to explain how the supportability factor was considered. 20 C.F.R. § 404.1520c(b)(2); *see S.W. v. O'Malley*, No. 24-cv-00248-SVK, 2024 WL 3580825, at *6 (N.D. Cal. Jul. 30, 2024) (finding reversible error where the ALJ failed to "explicitly discuss the 'supportability' of a [medical source] opinion"); *Anne B. v. Kijakazi*, No. 22-CV-07012-TSH, 2023 WL 8039639, at *10 (N.D. Cal. Nov. 20, 2023) ("The ALJ discussed consistency, but he is required to address both consistency and supportability.").

<u>The ALJ's Analysis of Dr. Jone's Opinion</u>

Dr. Jone, a non-examining state agency physician, completed a Physical Residual Functional Capacity Assessment on Plaintiff's abilities, on September 30, 2020. [AR 48-51]. Based on their review of the medical evidence, Dr. Jone restricted Plaintiff to lifting and carrying less than ten pounds either occasionally or frequently. [AR 48]. Dr. Jone additionally restricted Plaintiff to two hours of standing and/or walking and six hours of sitting within an eight-hour workday. *Id.* Dr. Jone reported that Plaintiff could only occasionally climb ramps or stairs, balance, kneel, crouch, or crawl, and that she could never climb ladders, ropes, or scaffolds. [AR 49]. Dr. Jone further reported that Plaintiff required a handheld assistive device to walk and that she was unable to push or pull using her lower extremities. [AR 48]. Dr. Jone concluded that Plaintiff's environmental limitations were unlimited, meaning that she could not work (under any circumstances) where there was extreme cold, extreme heat, wetness, humidity, noise, vibrations, fumes, odors, dusts, gases, or poor ventilation. [AR 49].

<div style="writing-mode: vertical">United States District Court<br>Northern District of California</div>

In her written decision, the ALJ summarized Dr. Jone's opinion that Plaintiff "could occasionally lift and/or carry less than 10 pounds; frequently lift and/or carry less than 10 pounds; stand and/or walk (with normal breaks) for a total of about 2 hours in an 8-hour workday; sit (with normal breaks) for a total of about 6 hours in an 8-hour workday; no push pull with the bilateral lower extremities and no foot controls[;]" that Plaintiff "could occasionally climb stairs/ramps[,] . . . could never climb ladders, ropes and scaffolds[;]" that Plaintiff "could occasionally balance, stoop, kneel, crouch and crawl[;]" that Plaintiff "had [assistive devices] for all ambulation . . . [and] should avoid all exposure to hazards such as machinery and heights[;]" and that Plaintiff "was precluded from push/pull with the lower extremities."  [AR 21].  While finding that Dr. Jone's opinion was mostly consistent with that of Dr. Hanna, a non-examining state agency physician who subsequently reviewed Plaintiff's record at the reconsideration level, the ALJ concluded that Dr. Jone's opinion at the initial level was only "partially persuasive," because "[l]imitations of lifting and carrying less than ten pounds are overly restrictive and inconsistent with [Plaintiff's] activities of daily living, treatment record and recommendation for exercising including swimming and gymnastics."  *Id.*

Plaintiff argues that the ALJ erred in evaluating Dr. Jone's opinion regarding Plaintiff's being restricted to lifting and/or carrying less than ten pounds frequently or occasionally, because the ALJ failed to consider or discuss the extent to which the limitation was supported by other evidence in the record.  [Dkt. 12 at 16-17].  Plaintiff also contends that the ALJ's finding that Dr. Jone's opinion was inconsistent with Plaintiff's activities of daily living was not supported by substantial evidence (and thus erroneous), because the ALJ "ignored" other evidence in the record that was "clearly consistent" with Dr. Jone's finding.  *Id.* at 17-18.

The Commissioner, in response, does not appear to dispute Plaintiff's contention that the ALJ failed to address the supportability factor in connection with the ALJ's assessment of Dr. Jone's opinion.  [Dkt. 14 at 9].  Rather, the Commissioner argues that the ALJ's evaluation is supported by substantial evidence because the ALJ found Dr. Jone's lifting restrictions "partially persuasive" based on the fact that they were inconsistent with other evidence and "the Ninth Circuit has held that the ALJ may find less persuasive an opinion on either consistency or

United States District Court
Northern District of California

1    supportability." *Id.* (citing *Allen v. Kijakazi*, No. 22-35056, 2023 WL 2728857, at *1 (9th Cir.

2    Mar. 31, 2023); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002)).

3             The Court finds that the ALJ erred by failing to follow the proper legal framework in

4    evaluating Dr. Jone's opinion.  The ALJ did not address the extent to which Dr. Jone's lifting and

5    carrying restrictions were or were not supported by the objective medical evidence.  20 C.F.R.

6    § 404.1520c(b)(2).  The Commissioner's tacit admission that the ALJ failed to explicitly address

7    supportability is evident.  By arguing the legal issue that an ALJ may properly find a medical

8    source opinion unpersuasive based on either a lack of consistency or a lack of support with the

9    objective medical evidence, the Commissioner fails to explain how the Court is to review a written

10   decision that fails to explicitly address the legally required factors.  Regardless of how the law

11   may allow an ALJ to reach a conclusion based on a proper application of the factors in the

12   abstract, the ALJ must still consider both factors prior to making such a finding.  The ALJ failed

13   to do so here.  Remand on this issue is, therefore, required.

14           The ALJ's Analysis of Dr. Leavitt's Opinion

15           Dr. Leavitt, a pediatrician, treated Plaintiff for spina bifida and other ailments on an

16   ongoing basis dating back to at least 2012.  *See* AR 846-1007.  The record contains a single-page

17   typewritten letter from Dr. Leavitt, dated March 22, 2018, regarding her assessment of Plaintiff's

18   medical conditions.  [AR 927].  In the letter, Dr. Leavitt diagnosed Plaintiff as suffering from

19   spina bifida, which she characterized as a "chronic" condition requiring "lifelong treatment" that

20   "will never be improved or cured."  *Id.*

21           In her written decision, the ALJ neither discusses, nor even mentions, Dr. Leavitt's opinion

22   even though the opinion was clearly a part of the record before the ALJ.  *See generally* AR 15-24.

23   The controlling regulations make clear that the ALJ must evaluate every medical opinion that the

24   ALJ receives, regardless of its source.  SSR 96-8p ("The RFC assessment must always consider

25   and address medical source opinions.  If the RFC assessment conflicts with an opinion from a

26   medical source, the adjudicator must explain why the opinion was not adopted.").  In this case, the

27   ALJ's failure to consider Dr. Leavitt's opinion in the written decision, or give any reason for

28   disregarding it, is contrary to the requirements of the governing regulations.  As such, the ALJ's

United States District Court
Northern District of California

1  failure to discuss (much less evaluate) Dr. Leavitt's opinion constituted clear legal error. Remand

2  is therefore required on this issue as well.

3                                    **CONCLUSION**

4        For the foregoing reasons, **IT IS ORDERED THAT**:

5    1.  The Commissioner's final decision is **REVERSED** and this case is **REMANDED** to the

6        Commissioner for further administrative proceedings consistent with this Order.

7    2.  Plaintiff is awarded costs pursuant to Federal Rule of Civil Procedure 54(d)(1).

8        **IT IS SO ORDERED.**

9  Dated:  September 24, 2024

10                                   _____

11                                   PETER H. KANG
                                     United States Magistrate Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California